UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| DM RECORDS, INC. | ) |
| PLAINTIFF, | ) |
| v. | ) |
| X-CLUSIVE RECORDS, INC., BENJAMIN FERRER, JR., LAZARO CUNILL, and GABRIEL PEREZ | ) |
| DEFENDANTS. | ) |

**COMPLAINT FOR DECLARATORY RELIEF**

COMES NOW the Plaintiff, DM Records, Inc. (hereinafter "Plaintiff"), by and through its attorney Charlotte Towne, Esq., and complains against X-clusive Records, Inc. (hereinafter "X-clusive Records"), Benjamin Ferrer, Jr. (hereinafter "Ferrer"), Gabriel Perez (hereinafter "Perez"), and Lazaro Cunill (hereinafter "Cunill"), (collectively "Defendants") as follows:

**I.  PARTIES**

1. Plaintiff is a Florida corporation authorized to do business and doing business in the music content industry at its principal place of business in North Miami Beach, Florida.

2. Upon information and belief, Defendant X-clusive Records is a Florida corporation organized in North Miami, Florida.

3. Upon information and belief, Defendant Ferrer is an individual who resides in Hallandale Beach, Florida.

4. Upon information and belief, Defendants X-clusive Records and Ferrer are the alter ego of the other, and each is the officer, agent, servant, representative, and/or employee of

the other, acting in participation with the other, having authority or apparent authority to bind the other.

5. Upon information and belief, Defendant Perez is an individual who resides in Cape Coral, Florida.

6. Upon information and belief, Defendant Cunill is an individual who resides in Hialeah, Florida.

## II.  NATURE OF THE CASE

7. This is an action for declaratory relief for non-infringement of copyrights. The copyrights at issue are both the sound recording copyrights and musical composition copyrights for songs on an album entitled <u>How Ya' Livin'</u> (hereinafter the "Album"). Defendants Perez and Cunill, performing under the group name "Mentally Disturbed" also referred to as "MD", are featured artists performing on the Album. One of the songs on the Album is entitled "Swing That Thing". All of MD's songs on the Album, including "Swing That Thing", are the subject of this action.

8. On or about September 8, 1999, Plaintiff acquired ownership of MD's songs on the Album, including the master and publishing rights to the Album's songs, which included the song entitled "Swing That Thing", after Plaintiff purchased the Album, and copyright rights therein, along with other assets, including numerous other albums, from the bankrupt estate of Isbell Records, Inc. ("Isbell Records"). Isbell Records was doing business as Bellmark Records. Plaintiff's purchase of Isbell Records' assets was pursuant to an Order of the United States Bankruptcy Court in the Eastern District of Texas (hereinafter the "Bankruptcy Court") in the Isbell Records' Chapter 7 bankruptcy, case no. 97-41243-DRS (hereinafter the "Isbell Bankruptcy").

9. Upon information and belief, Bellmark Records entered into an agreement with Defendants which transferred their rights in the Album's songs' sound recording and underlying musical composition copyrights (*i.e.* the Album's songs' masters and publishing) to Isbell Records doing business as Bellmark Records and its other affiliated entities.

10. Upon information and belief, all of Isbell Records' assets, wherever located, including all of Isbell Records' rights in the songs on the Album, were transferred to Plaintiff free and clear of any liens, claims, and encumbrances pursuant to the Order of the Bankruptcy Court.

11. Upon information and belief, at no time prior to or during the Isbell Bankruptcy did Defendants object to the selling of Isbell Records' rights in the Album's songs to Plaintiff.

12. Since Plaintiff acquired ownership rights in the Album's songs in the Isbell Bankruptcy, Plaintiff and its licensees have exploited their rights in some, or all, of the Album's songs, including the song entitled "Swing That Thing", for approximately 12 years.

13. Defendants now assert that Plaintiff is violating their proprietary rights in the Album's songs' copyrights by licensing one of the Album's songs entitled "Swing That Thing" for use by Buffalo Wild Wings, Inc. ("Buffalo Wild Wings") in a Buffalo Wild Wings advertisement. Defendants have threatened imminent suit against Plaintiff and Plaintiff's licensees if Plaintiff does not pay Defendants a monetary settlement.

14. Defendants' assertions that Plaintiff has violated their copyrights in the Album's song ignores the fact that they conceded to Plaintiff's rights in the Album's songs when (1) never at any time during the Isbell Bankruptcy did any of the Defendants object to Plaintiff's acquisition of the Album, (2) Defendants knew Plaintiff was exploiting the Album's songs in 2000, (3) Defendants were informed by Plaintiff in 2000 of Plaintiff's rights in the Album's

songs by virtue of Plaintiff's purchase of the same in the Isbell Bankruptcy in 2000, (4) upon learning in 2000 of Plaintiff's purchase of rights in the Album's songs in the Isbell Bankruptcy, Defendants proceeded to sit back and do nothing while Plaintiff continued to exploit the Album's songs for 12 years, and (5) Defendants have taken no legal action against Plaintiff at any time over the past 12 years to enforce their purported rights in the Album's songs.

15. Defendants' belated assertions that Plaintiff has violated their copyrights in the Album's song are unfounded and were presumably made with the sole intention of inducing Plaintiff into paying Defendants a monetary settlement to avoid the cost of potentially having to defend against their baseless claims.

16. Therefore, to avoid legal uncertainty and to protect its business interests, Plaintiff has brought this action for declaratory judgment that Plaintiff has not infringed on the copyrights in the Album's songs. Plaintiff also seeks a determination that Defendants are barred from bringing claims against Plaintiff as a result of the order of the Bankruptcy Court.

17. Plaintiff also seeks injunctive relief and an award of costs and reasonable attorney's fees.

### III.  JURISDICTION AND VENUE

18. This civil action arises under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202, and the Federal Copyright Act, 17 U.S.C. §§ 101, et seq. (the "Copyright Act"). This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331. This Court also has federal subject matter jurisdiction pursuant to 28 U.S.C. §1338(a) because the action arises under the Copyright Act.

19. This Court has personal jurisdiction over Defendants because (a) Defendants reside in and do business in the State of Florida; (b) Defendants intentionally sent threatening

4

correspondence to Plaintiff in the State of Florida, asserting that the activities of Plaintiff in Florida infringe their copyrights in the Album's songs; (c) Defendants sent this correspondence with the intention of inducing Plaintiff to cease certain business activities and pay Defendants a monetary settlement, thereby causing injury to Plaintiff in Florida; (d) Plaintiff filed the present action in direct response to Defendants' correspondence, and therefore Plaintiff's claim arises out of Defendants' contacts with the State of Florida; and (e) exercise of personal jurisdiction would not be unreasonable.

20.  Venue is proper in this District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of events involved in this action occurred in this District, and the injury to Plaintiff from Defendants' unlawful conduct arose in this District.

### IV. STATEMENT OF FACTS

21.  On September 8, 1999, Plaintiff purchased the assets of Isbell Records pursuant to a Court Order in Plano Texas (case no. 97-41243-DRS).  Isbell Records was doing business as Bellmark Records.

22.  Upon information and belief, the purchase of the Isbell Records' assets by Plaintiff was free and clear of any liens, claims and encumbrances for all assets wherever located.  Upon information and belief, the asset purchase included the master and publishing rights to the Album entitled How Ya' Livin' which included the song entitled "Swing That Thing".

23.  On September 8, 1999, as part of the Isbell Bankruptcy sale of Isbell Records' assets to Plaintiff, the Chapter 7 Bankruptcy Trustee of the Estate of Isbell Records signed a written copyright transfer in favor of Plaintiff.

24. At no time prior or during the Isbell Bankruptcy proceedings did anyone purporting any rights in the Album's masters and/or music publishing rights object to the sale of Isbell Records' assets to Plaintiff or stay the sale.

25. On January 12, 2000, Plaintiff recorded the Isbell Bankruptcy transfer of copyrights to Plaintiff with the United States Copyright Office.

26. Once the Isbell Bankruptcy sale was completed, Plaintiff began to exploit the rights to several of the Album's songs including the song, "Swing that Thing" on a CD compilation entitled Booty Allstars, released on April 16, 2000.  Plaintiff registered the copyright to the compilation on December 27, 2001. (See copy of the United States Copyright Office website search records for the Plaintiff's copyright registration No. SR 304524 for the Booty Allstars compilation album, attached hereto as **"Exhibit A"**.)

27. From April 16, 2000 to present, DM records, Inc. has been continuously exploiting the Album's songs in physical goods and digitally.

28. On June 4, 2000, Defendant Ferrer, president of Defendant X-clusive Records, Inc., who purports to be a representative of the MD performers and songwriters, Defendants Gabriel Perez and Lazaro Cunill, sent notice to Plaintiff asserting that Plaintiff's use of the Album's material was unauthorized.

29. On June 6, 2000, Plaintiff responded to the allegations of Defendant Ferrer and informed him that the Album's songs had been assets of Isbell Records that were purchased out of the Isbell Bankruptcy by Plaintiff.  Plaintiff included in its correspondence with Defendant Ferrer a copy of the Isbell Bankruptcy Bill of Sale and a photocopy of the master CD listing the titles and 12" record label for Defendant Ferrer to view.

30. On June 6, 2000, Defendant Ferrer responded to Plaintiff's June 6, 2000 letter and informed Plaintiff that it would be receiving documents soon that would support Defendant Ferrer's claims.

31. On June 7, 2000, Plaintiff responded to Defendant Ferrer's June 6, 2000 letter and informed Defendant Ferrer that until Ferrer can provide documentation to support his allegations, Plaintiff would continue to conduct business as usual and exploit the Album's songs. Thereafter, Plaintiff did not receive a response from Defendant Ferrer to Plaintiff's June 7, 2000 letter with any documentation to support his allegations.

32. Then, on June 27, 2001 (almost one year from the previous correspondence), Defendant Ferrer sent a letter to Plaintiff soliciting Plaintiff's licensing of new products from X-clusive Records that were unrelated to the Album.

33. Then, again on September 26, 2001, Defendant Ferrer sent Plaintiff several emails claiming that he owned the Album's songs and that he signed a release from Bellmark Records.

34. On October 10, 2001, Defendant Ferrer faxed a partially executed release with Bellmark Records containing only his signature on behalf of Defendant X-clusive, but no signature on behalf of Bellmark Records. Since Defendant Ferrer failed to send Plaintiff evidence of a fully executed release from Bellmark Records that was signed by Bellmark Records, Plaintiff proceeded to continue using the Album's songs as a result without any further objection of Defendants for over 10 years.

35. At no time after the October 10, 2001 fax from Defendant Ferrer of the partially executed release that was lacking Bellmark Records' signature did Defendants object to the exploitation of the Album's songs by Plaintiff until recently. Otherwise, there have been no objections regarding Plaintiff's use of the Album's songs in over 10 years.

36. On February 21, 2012 DM Records, Inc. entered into an agreement with Fallon advertising agency to exploit one of the Album's songs entitled "Swing that Thing" for approximately 10 seconds in a national television advertisement for a restaurant chain called Buffalo Wild Wings. The ad ran for 13 weeks. Plaintiff's agreement with Fallon advertising agency also included use of the "Swing That Thing" song in the Buffalo Wild Wings advertisement on the Internet for one year.

37. Sometime in February of 2012, after entering into the agreement with Fallon advertising agency for use of the "Swing That Thing" song in the Buffalo Wild Wings advertisement, Plaintiff contacted Defendant Ferrer to request the current addresses of the MD performers, Defendants Perez and Cunill, in order to help facilitate payment of SAG off-camera performance residuals to Defendants Perez and Cunill for their performances on "Swing That Thing" used in the Buffalo Wild Wings advertisement. In response to Plaintiff's contact, Defendant Ferrer once again made allegations of his ownership in the Album's songs and asserted that he had a release from Bellmark Records, and then proceeded to forward and CC Plaintiff on email communications with Defendant Ferrer's attorneys between February 2012 thru April 5, 2012.

38. On March 26, 2012, DM received an email from Defendant Perez with an attached new song by Defendant Perez to solicit possible use of Defendant Perez's song by Plaintiff.

39. See copies of the correspondence referenced in paragraphs 28 thru 35, 37, and 38 hereof between Defendants and Plaintiff commencing June 4, 2000 and continuing thru April 5, 2012 attached hereto as **"Exhibit B"**, demonstrating Defendants' knowledge that Plaintiff has continuously been exploiting the Album's songs over the past 12 years

40. On April 26, 2012, Plaintiff received a copy of a cease and desist demand letter dated April 16, 2012 from an attorney representing Defendants Perez and Cunill (hereinafter "Defendants Perez and Cunill's Demand Letter"), which demanded that Plaintiff and Buffalo Wild Wings immediately pay $250,000 to Defendants Perez and Cunill, and cease use of the Album's song "Swing That Thing" in the Wild West Wings advertisement, (incorrectly referred to as "Sling That Thing" in the letter), and if either an immediate payment of $250,000 or cessation of use of the song by Plaintiff and Buffalo Wild Wings did not occur, than Plaintiff and Buffalo Wild Wings would be sued. (See copy of the Defendants Perez and Cunill's Demand Letter, attached hereto as **"Exhibit C"**.)

41. On May 1, 2012, Defendant Ferrer sent a threatening email to Plaintiff stating "I'll see you in court." (See copy of Defendant Ferrer's threatening email attached hereto as **"Exhibit D"**)

42. An actual case or controversy has arisen between the parties. Defendants have threatened imminent litigation against Plaintiff and Plaintiff's licensees, and have asserted that Plaintiff's and its licensees' exploitations of the Album's songs constitutes copyright infringement. These statements threaten injury to Plaintiff.

## COUNT 1
### DECLARATORY RELIEF FOR NON-INFRINGEMENT

43. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 42 hereof as if fully set forth herein.

44. Based on the facts set forth in the foregoing allegations, an actual controversy has arisen and now exists between the parties as to the ownership and rights in the Album's songs.

45. Under the circumstances, a judicial declaration is necessary and appropriate at this time so that the parties and others may determine their rights under the laws at issue.

46. Plaintiff is entitled to a declaration that Plaintiff's and its licensees' exploitation of the Album's songs, including use of the Album's song "Swing That Thing" in the Buffalo Wild Wings advertisement, did not infringe on Defendants' alleged copyrights in the Album's songs because (a) Isbell Records was an owner of the copyrights in the Album's songs, which were assigned to Plaintiff, and Plaintiff is now an owner of the copyrights in the Album's songs, or (b) alternatively, Isbell Records was implicitly licensed the right by Defendants to exploit the Album's songs, and such license was assigned to Plaintiff, or (c) alternatively, due to Defendants' lack of objection to Plaintiff's continued exploitation of the Album's songs for over 10 years despite Defendants' knowledge of the same, Plaintiff has a valid and enforceable implied license to exploit the Album's songs.

47. Plaintiff is further entitled to a declaration that Defendants are estopped from bringing claims against Plaintiff under the statute of limitations pursuant to 17 U.S.C. § 507(b) of the Copyright Act, and/or laches.

48. Based on the Bankruptcy Court's Order and the United States Bankruptcy Code ("Bankruptcy Code"), Plaintiff is further entitled to a declaratory judgment that (i) the Bankruptcy Court's Order approving the sale of all of Isbell Records' assets, and the closing of the Isbell Bankruptcy case, preclude Defendants' claims pursuant to the doctrines of res judicata and/or claims preclusion; and (ii) section 363(m) of the Bankruptcy Code protects Plaintiff as a good-faith purchaser and precludes Defendants' post-bankruptcy sale claims.

49. Upon information and belief, Defendants' assertions of copyright infringement were and continue to be made in bad faith for the sole purpose of inducing Plaintiff into paying

them a monetary settlement merely to avoid the cost associated with defending their baseless claims.

50. By their actions, Defendants have forced Plaintiff to retain the services of an attorney to prosecute this action, and therefore, Plaintiff seeks to recover its reasonable attorney's fees and costs.

## TRIAL BY JURY

51. Plaintiff hereby requests trial by jury on all issues wherein trial by jury is permissible.

## PRAYER FOR RELIEF

NOW WHEREFORE, Plaintiff prays that the Court grant the following relief:

A. A declaratory judgment that Plaintiff's and its licensees' exploitation of the Album's songs did not infringe on Defendants' alleged copyrights in the Album's songs;

B. A declaratory judgment that Defendants are estopped from bringing claims against Plaintiff under the statute of limitations pursuant to 17 U.S.C. § 507(b) of the Copyright Act, and/or laches;

C. A declaratory judgment that (i) the Bankruptcy Court's Order approving the sale of all of Isbell Records' assets, and the closing of the Isbell Bankruptcy case, preclude Defendants' claims pursuant to the doctrines of res judicata and/or claims preclusion; and (ii) section 363(m) of the Bankruptcy Code protects Plaintiff as a good-faith purchaser and precludes Defendants' post-bankruptcy sale claims;

D. Injunctive relief enjoining Defendants, and their agents, servants, employees, successors and assigns, and all those acting under the authority of or in privity with them, from asserting that Plaintiff's exploitations of the Album's songs infringes upon Defendants' alleged

copyrights in the Album's songs or violates any other rights of Defendants related to the Album's songs;

  E. An award of costs and reasonable attorney's fees incurred by Plaintiff in prosecuting this action, pursuant to 17 U.S.C. § 505;

  F. That Plaintiff be awarded trial by jury on all issues triable by jury; and

  G. That Plaintiff be awarded any additional relief as this Court deems just and proper.

Dated:  May 7, 2012         Respectfully submitted,

                CHARLOTTE TOWNE, P.A.
                Attorney for Plaintiff

                By: /s/ *Charlotte Towne*
                Charlotte Towne, Esq.
                Florida Bar Number: 64096
                499 East Sheridan Street, Suite 201
                Dania Beach, Florida 33004
                Phone:  (954) 306-6624
                Fax:  (954) 306-6027
                Email:  legal@charlottetownelaw.com