## SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") is entered into by and between DM Records, Inc., a Florida corporation ("**DM**"), Benjamin Ferrer, Jr., a Florida resident ("**Ferrer**"), and X-clusive Records, Inc., a Florida corporation (collectively, with Ferrer, "**X-clusive**"),. DM, X-clusive and Ferrer (each a "**Party**," and collectively, the "**Parties**") agree to the terms outlined herein as of the date on which the Agreement is fully executed by the Parties ("**Effective Date**").

## RECITALS

A. **WHEREAS**, in 1994, X-clusive, on behalf of itself, Ferrer, and the musical group "MD" aka "Mentally Disturbed" ("**MD**"), entered into an agreement with an Emerge Music Corporation, a Delaware corporation ("**Emerge**") that granted an assignment of exclusive rights, title, and interest to Emerge and Emerge's assignees, subsidiaries and affiliates, including but not limited to Emerge's alter ego, Isbell Records, Inc., doing business as Bellmark Records (collectively, with Emerge, "**Bellmark**"), in sound recording copyrights and underlying musical composition copyrights in songs embodying the performances of the musical group MD and Ferrer including but not limited to the MD song titles listed in the PMCD Master PQ Log dated May 30, 1994 for the MD album entitled "How Ya Livin" attached hereto as **EXHIBIT "A"** and incorporated herein (the "**MD Songs**").

B. **WHEREAS**, X-clusive and Ferrer never entered into any written agreements with the individual Alvertis Isbell (also known as Al Bell) personally; Alvertis Isbell aka Al Bell was merely a signatory on behalf of Emerge dba Bellmark.

C. **WHEREAS**, any ownership or publishing administration rights in the MD Songs musical composition copyrights that was held by the authors of the MD Songs was transferred to Bellmark.

D. **WHEREAS**, in 1999, DM acquired ownership of Bellmark's numerous catalogs of songs, including but not limited to the MD Songs and the sound recording copyrights and underlying musical compositions copyrights therein, by and through an assignment of all rights, title and interest that Bellmark held in such songs, free and clear of any claims, liens or encumbrances, pursuant to an Order of the United States Bankruptcy Court in the Eastern District of Texas (the "**Bankruptcy Court**") in the Isbell Records, Inc.'s Chapter 7 bankruptcy, case no. 97-41243-DRS (the "**Isbell Bankruptcy**").

E. **WHEREAS**, at no time during the Isbell Bankruptcy did Ferrer or X-clusive on behalf of itself, Ferrer, or MD, object to the sale of MD Songs to DM.

F. **WHEREAS**, in accordance with the rights, title and interest in the Bellmark song catalogs granted to DM pursuant to the Order of the Bankruptcy Court, DM has been exploiting the MD Songs for the past twelve (12) years.

G. **WHEREAS**, in 2000, X-clusive contacted DM alleging its ownership of the MD Songs and that DM was exploiting the MD Songs without its permission; in response thereto, DM informed X-clusive that it was the owner of the MD Songs pursuant to the Bankruptcy Court Order and would continue to conduct business as usual exploiting the MD Songs until X-clusive could provide documentation supporting its claims.

Initials _____

Initials _____

H. **WHEREAS**, X-clusive never provided DM with any documentation demonstrating a fully executed assignment of copyrights in the MD Songs from Bellmark back to X-clusive or Ferrer dated prior to the Isbell Bankruptcy and, as a result thereof, DM continued to exploit the MD Songs without objection by X-clusive for approximately twelve (12) years until X-clusive once again contested DM's exploitation of the MD songs and threatened suit against DM after DM licensed one of the MD Songs entitled "Swing That Thing" for use in a Buffalo Wild Wings commercial.

I. **WHEREAS,** a dispute has arisen between the Parties as to the ownership of and scope of rights in and to the MD Songs ("**Dispute**").

J. **WHEREAS**, on or about May 7, 2012, DM filed a declaratory relief action against X-clusive, Ferrer, and MD members, Gabriel Perez and Larazo Cunill ("**Perez and Cunill**"), in the United States District Court for the Southern District of Florida to resolve the Dispute, Case No. 1:12-cv-21719-WMH ("**Litigation**").

K. **WHEREAS**, DM, X-clusive, and Ferrer have reached a compromise and settlement with respect to any and all known claims and causes of action related to the Dispute and Litigation, solely as they pertain to DM, X-clusive and Ferrer (and not as they pertain to Perez and Cunill), and wish to memorialize their communications by entering into this Agreement, doing so freely and voluntarily, after having received the opportunity to consult independent counsel and with full knowledge of the binding and conclusive nature thereof.

**NOW THEREFORE**, in consideration of the mutual covenants of the Parties and other valuable consideration, the sufficiency and receipt of which is hereby acknowledged, the Parties agree as follows:

## TERMS

### 1. PURPOSE

This Agreement is made between the DM, X-clusive and Ferrer for the settlement of their claims, obligations and losses with respect to, arising out of, or in any way relating to the events which gave rise to the Dispute and Litigation. It is understood and agreed that the terms and compromises contained herein are not to be construed as an admission of liability on the part of either Party. Rather, the Parties are entering this Agreement to reach a business solution to their dispute. Notwithstanding the foregoing, DM, X-clusive, and Ferrer acknowledge and agree that the foregoing RECITALS are true and correct and incorporated herein by this reference.

### 2. NON-DISPARAGEMENT

As consideration for the releases set forth in Section 3 of this Agreement, X-clusive and Ferrer agree to refrain from making any disparaging, negative or uncomplimentary statements, whether public or private, regarding DM, including without limitation any owners, officers, directors or employees thereof in those capacities.

Initials

Initials

## 3. TERMS OF AGREEMENT

### 3.1 X-clusive and Ferrer Released Claims

**(a)** X-clusive and Ferrer do hereby relinquish, release and forever discharge any and all claims of right, entitlements, and ownership of the MD Songs, including **without limitation, to "Swing That Thing". X-clusive and Ferrer's relinquishment, release and** discharge of all claims to the MD Songs shall specifically include, but is not limited to, any and all claims of ownership, copyright or entitlement to, without limitation, revenue derived from artist royalties, mechanical royalties, synchronization and transcription royalties, performance royalties, print royalties, foreign subpublishing and any other revenue, royalties and/or income associated with, or earned by the MD Songs. X-clusive and Ferrer expressly understand, agree and stipulate that the MD Songs are the sole property of DM pursuant to the Bankruptcy Court Order.

**(b)** X-clusive and Ferrer on behalf of any and all persons and/or entitles who may claim through them, including parents, predecessors, successors, affiliates, assigns, liability insurers, and any past, present, or future partners, principals, officers, directors, representatives, agents, servants, employees, and/or any other person claiming a past or present interest in any agreement with them hereby generally and unconditionally **RELEASE, ACQUIT AND FOREVER DISCHARGE** DM, its predecessors, successors, parents, subsidiaries, affiliates, assigns, liability insurers, and any past, present, or future partners, principals, officers, directors, representatives, agents, servants and employees of and from any and all claims, demands, rights, actions, causes of action, suits, contracts, debts, expenses, liabilities, obligations, damages, losses, penalties, costs and allegations of any kind and character whatsoever, whether legal, contractual, statutory, or equitable in nature, known or unknown, suspected or unsuspected, direct or indirect, absolute, fixed, or contingent, that exist, or may exist, from the beginning of time through the date of the execution of this Agreement by X-clusive and Ferrer including but not limited to arising out of or in any way connected with: (1) the Dispute, (2) the MD Songs including but not limited to claims for copyright infringement, and (3) any of the claims, demands, causes of action, facts, transactions, occurrences, circumstances, acts or omissions, and allegations of any kind or character whatsoever, which were or could have been asserted by X-clusive and Ferrer in the Ligitation (collectively the "**X-clusive and Ferrer Released Claims**").

### 3.2 DM RELEASED CLAIMS

DM on behalf of any and all persons and/or entities who may claim through them, including parents, predecessors, successors, affiliates, assigns, liability insurers, and any past, present, or future partners, principals, officers, directors, representatives, agents, servants, employees, and/or any other person claiming a past or present interest in any agreement with them hereby generally and unconditionally **RELEASE, ACQUIT AND FOREVER DISCHARGE** X-clusive and Ferrer, its predecessors, successors, parents, subsidiaries, affiliates, assigns, liability insurers, and any past, presen, or future partners, principals, officers, directors, representatives, agents, servants and employees of an from any and all claims, demands, rights, causes of action, suits, contracts, debts, expenses, liabilities, obligations, damages, losses, penalties, costs and allegations of any kind and character whatsoever, whether legal, contractual, statutory, or equitable in nature, known or unknown, suspected or unsuspected, direct or indirect, absolute, fixed, or contingent, that exist, or may exist, from the beginning of

Initials 

Initials

time through the date of the execution of this Agreement by DM arising out of: (1) the Dispute, (2) the MD Songs including but not limited to claims for copyright infringement, and (3) any of the claims, demands, causes of action, facts, transactions, occurrences, circumstances, acts or omissions, and allegations of any kind or character whatsoever, which were or could have been asserted by DM in the Litigation.

### 4. DISMISSAL OF ALL CLAIMS IN THE LITIGATION

Within 10 (ten) days of the full execution of this Agreement, DM shall execute and file the necessary documents to dismiss the Litigation, only as to Ferrer and X-clusive, with prejudice.

### 5. LITIGATION COSTS

DM, X-clusive and Ferrer shall each bear their own legal fees and costs associated with the Litigation, including any court costs, process server fees, and fees payable to court reporters, mediators or other third parties with respect to the Litigation and the matters resolved through this Agreement. Notwithstanding the foregoing, DM shall be entitled to reasonable attorneys' fees and costs pursuant to Section 6.

### 6. REMEDIES

All parties acknowledge and agree that in the event either materially breach this Agreement, the other party shall be entitled to specific performance, injunctive relief and such other relief as any court with proper jurisdiction over the matter may deem just and proper. Breach of Sections 2, 3, and 14 shall be considered a material breach of this Agreement. In the event that either party files suit to compel performance of this Agreement, the prevailing party shall be entitled to an award of the reasonable costs and attorneys' fees incurred in such action.

### 7. GOVERNING LAW

This Agreement will be deemed to have been executed in the State of Florida and will be construed and interpreted according to the laws of that state without regard to its conflicts of law principles or rules. The Parties agree that any legal action or proceeding with respect to this Agreement shall be brought in Dade County, State of Florida. The Parties consent to the personal jurisdiction of such courts, and hereby waive any jurisdictional or venue defenses otherwise available to them. In the event that any action is instituted in connection with this Agreement, the Parties agree that any service of process may be made to them at the addresses listed in Section 16 by regular United States mail, or any private overnight mail. Any Party who refuses to accept service of process at the addresses listed in Section 16 shall, if such Party actually received the documents to be served, be responsible for the costs of service of process of those documents regardless of who ultimately prevails in the suit.

Initials

Initials

## 8. WAIVER

No failure or delay by a Party to insist on the strict performance of any term of this Agreement or to exercise any right or remedy shall operate as a waiver thereof. No waiver by either Party of any default shall be deemed a waiver of prior or subsequent default of the same or other provisions of this Agreement.

## 9. NEGOTIATED AGREEMENT

The Parties acknowledge that they have had full opportunity to review and consider the contents of this Agreement. All of the terms contained in this Agreement, including the recitals concerning the intentions of the Parties and the purpose of this Agreement, are material terms. In the event that a dispute arises with respect to this Agreement, neither Party shall assert that the other Party is the drafter of this Agreement for purposes of resolving ambiguities which may be contained herein.

## 10. SEVERABILITY

If any provision of this Agreement is held to be inconsistent with any present or future law, ruling, rule or regulation of any court, governmental or regulatory authority of competent jurisdiction, such provision shall be modified to the minimum extent necessary to effect compliance, and the remainder of this Agreement shall not be affected. If any provision is determined to be illegal, unenforceable or void, then such provision shall be severed from this Agreement and the remainder of this Agreement shall be enforceable.

## 11. COUNTERPARTS

This Agreement may be executed in any number of counterparts, each of which may be deemed an original, and all of which together will constitute one instrument. Facsimile and electronic copies shall be deemed original copies of this Agreement.

## 12. BINDING EFFECT

This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

## 13. INTEGRATIONS

This Agreement, including the RECITALS herein constitutes the entire understanding of the Parties, and revokes and supersedes all prior agreements between the Parties and is intended as a final expression of their Agreement. It shall not be modified or amended except in writing signed by the Parties hereto and specifically referring to this Agreement. This Agreement shall take precedence over any other documents that may conflict with this Agreement.

Initials _____

Initials _____

## 14. WARRANTIES

### 14.1 X-clusive and Ferrer Warranties

X-clusive and Ferrer warrant and represent that they are the sole owners of the X-clusive and Ferrer Released Claims and that they have not assigned, pledged, or otherwise sold or transferred in any manner whatsoever, either by instrument in writing or otherwise, any right, title, interest, or claim that they have or may have against DM. If any person or entity claiming ownership of any interest in the X-clusive and Ferrer Released Claims by, through, or under X-clusive or Ferrer brings an action in a court of competent jurisdiction of any kind against DM on such X-clusive and Ferrer Released Claims, then X-clusive and Ferrer shall fully indemnify, defend, and hold harmless DM, its officers, directors, employees, successors and assigns from, of and against any such claims, including costs, attorneys' fees, loss, liability or other expense that DM may sustain as a result thereof.

### 14.2 DM Warranties

DM warrants and represents that it is the sole owner of the DM Released Claims and that it has not assigned, pledged, or otherwise sold or transferred in any manner whatsoever, either by instrument in writing, or otherwise, any right, title, interest, or claim that it has or may have against X-clusive and Ferrer. If any person or entity claiming ownership of any interest in the DM Released Claims by, through, or under DM brings an action in a court of competent jurisdiction of any kind against X-clusive and Ferrer on such DM Released Claims, then DM shall fully indeminify, defend, and hold harmless Emergency, their officers, directors, employees, successors and assigns from, of and against any such claims, including all costs, attorneys' fees, loss, liability or other expense that X-clusive and Ferrer may sustain as a result thereof.

### 14.3 Mutual Warranties

DM, X-clusive and Ferrer each warrant and represent that they are legally competent to execute this Agreement.

## 15. ACKNOWLEDGEMENT

Each Party acknowledges that it has read this Agreement, understands it and agrees to be bound by its RECITALS and terms, that it has had the opportunity to receive advice of counsel with respect to this Agreement and has either received such advice of counsel or voluntarily waived the right to receive such advice of counsel, that it has the capacity and right to enter into this Agreement, and that it accepts the duties, obligations, privileges and rights granted hereunder.

## 16. NOTICES

All notices or demands of any kind that any Party is required to or desires to give in connection with this Agreement shall be in writing and shall be delivered by facsimile and/or by depositing the notice or demand in the United States mail, postage prepaid, and addressed to the parties as follows:

Initials
Initials

| DM: | X-clusive and Ferrer: |
|---|---|
| DM Records, Inc., 15421 West Dixie Highway, Unit 8, North Miami Beach, FL 33162 mark@dmrecords.com | X-clusive Records, Inc. c/o Ben Ferrer, Jr. 6237 SW 25th St, Miramar, Florida 33023 bferrerjr@aol.com |

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed, by DM, Ferrer, and by X-clusive's authorized representative, Ferrer, on the dates indicated below.

**BENJAMIN FERRER, JR., on behalf of himself and X-CLUSIVE RECORDS, INC. as its sole shareholder, officer, and director**

Date: July 31, 2012

**DM RECORDS, INC.**

Mark Watson, Its President

Date: July 31, 2012

Initials

Initials

Exhibit "A"

Client : BELLMARK
Project: MD
Title : HOW YA LIVIN
Date : Monday May 30, 1994
MD : 9415110

126125

Date Generated: Monday May 30, 1994
Page Number: 1

PQ Log:

PQ StartOffset : 00:00:00:10    PQ EndOffset    : 00:00:00:02
PQ SpliceOffset: 00:00:00:06    PQ MinIndex0Width: 00:00:01:00
UPC/EAN CODE   : 0000000000000

PQ Track/Index Information:

| T-X | TITLE/ISRC | COPY | EMPH | NO OFFSET TIME hh:mm:ss:ff | OFFSET TIME hh:mm:ss:ff | OFFSET DURATION hh:mm:ss:ff | CD TIME mm:ss:ff |
|---|---|---|---|---|---|---|---|
| 1 | | OFF | OFF | | | | |
| 0 | Pause | | | 00:01:58:00 | 00:01:57:20 | 00:00:02:00 | 00:00:00 |
| 1 | HOW YA LIVIN | | | 00:02:00:00 | 00:01:59:20 | 00:03:19:16 | 00:02:00 |
| | | | | | TOTAL: | 00:03:21:16 | |
| 2 | | OFF | OFF | | | | |
| 1 | LOOKIN OUT | | | 00:05:19:12 | 00:05:19:06 | 00:00:48:14 | 03:21:40 |
| | | | | | TOTAL: | 00:00:48:14 | |
| 3 | | OFF | OFF | | | | |
| 1 | REALITY | | | 00:06:07:26 | 00:06:07:20 | 00:04:10:07 | 04:10:00 |
| | | | | | TOTAL: | 00:04:10:07 | |
| 4 | | OFF | OFF | | | | |
| 1 | BASS BREAK | | | 00:10:18:03 | 00:10:17:27 | 00:00:12:04 | 08:20:17 |
| | | | | | TOTAL: | 00:00:12:04 | |
| 5 | | OFF | OFF | | | | |
| 1 | DANCE ✓ | | | 00:10:30:07 | 00:10:30:01 | 00:03:52:28 | 08:32:27 |
| | | | | | TOTAL: | 00:03:52:28 | |
| 6 | | OFF | OFF | | | | |
| 1 | U GO GIRL ✓ | | | 00:14:23:05 | 00:14:22:29 | 00:02:57:20 | 12:25:23 |
| | | | | | TOTAL: | 00:02:57:20 | |
| 7 | | OFF | OFF | | | | |
| 1 | ROLY'S HYPE | | | 00:17:20:25 | 00:17:20:19 | 00:00:36:08 | 15:22:73 |
| | | | | | TOTAL: | 00:00:36:08 | |
| 8 | | OFF | OFF | | | | |
| 1 | PERRITO (LATIN) | | | 00:17:57:03 | 00:17:56:37 | 00:03:49:29 | 15:59:18 |
| | | | | | TOTAL: | 00:03:49:29 | |
| 9 | | OFF | OFF | | | | |
| 1 | PERRITO (ENGLISH) | | | 00:21:47:02 | 00:21:46:26 | 00:03:46:26 | 19:49:15 |
| | | | | | TOTAL: | 00:03:46:26 | |
| 10 | | OFF | OFF | | | | |
| 1 | WINE ME DINE ME (REMIX) ✓ | | | 00:25:33:28 | 00:25:33:22 | 00:03:54:00 | 23:36:05 |
| | | | | | TOTAL: | 00:03:54:00 | |
| 11 | | OFF | OFF | | | | |
| 1 | WINE ME DINE ME (LATIN) | | | 00:29:27:28 | 00:29:27:22 | 00:04:07:15 | 27:30:05 |
| | | | | | TOTAL: | 00:04:07:15 | |
| 12 | | OFF | OFF | | | | |
| 1 | MD HYPE | | | 00:33:35:13 | 00:33:35:07 | 00:00:49:11 | 31:37:43 |
| | | | | | TOTAL: | 00:00:49:11 | |
| 13 | | OFF | OFF | | | | |
| 1 | ABUSADORA PART II | | | 00:34:24:24 | 00:34:24:18 | 00:03:22:11 | 32:26:70 |
| | | | | | TOTAL: | 00:03:22:11 | |
| 14 | | OFF | OFF | | | | |
| 1 | SWING THAT THING ✓ | | | 00:37:47:05 | 00:37:46:29 | 00:04:14:18 | 35:49:23 |
| | | | | | TOTAL: | 00:04:14:18 | |
| 15 | | OFF | OFF | | | | |
| 1 | ROLY'S REVENGE | | | 00:42:01:23 | 00:42:01:17 | 00:02:52:25 | 40:03:68 |
| | | | | | TOTAL: | 00:02:52:25 | |
| 16 | | OFF | OFF | | | | |
| 1 | E-ROOM SHAKIN | | | 00:44:54:18 | 00:44:54:12 | 00:00:24:23 | 42:56:55 |
| | | | | | TOTAL: | 00:00:24:23 | |
| 17 | | OFF | OFF | | | | |
| 1 | SHOUTOUTS | | | 00:45:19:11 | 00:45:19:05 | 00:02:58:16 | 43:21:38 |
| | | | | | TOTAL: | 00:02:58:16 | |
| | Leadout | | | 00:48:17:19 | 00:48:17:21 | | 46:20:02 |
| | Total | | | | | 00:46:20:01 | |

QUADIM

BELLMARK RECORDS - 5/30/94
MD "How Ya' Livin" (BR 71005-2)

PMCD Master - PQ Log Enclosed
Program begins at 00:02:00 (46:17)
(See PQ Log for Titles & Times)

5356 Sterling Center Drive • Westlake Village, California 91361
Tel: (818) 706-8843, (800) 576-EDIT • Fax: (818) 706-8426

*Copy of Master Tape* [handwritten]